## Clair E. More, Trustee, v. Christopher Dixon.

1. PARTNERSHIP—*Transfer of Assets by Partner.*—A transfer by one partner of the firm assets in the payment of a *bona fide* existing firm debt is valid, unless the purchasing creditor has notice prior to the consummation of the sale that the copartner does not consent to the transfer.

2. SAME—*Persons Holding Themselves Out as Partners—Estoppel.*— A person holding himself out as a partner of another to third persons is estopped to deny the existence of such partnership as to such third persons dealing on the faith of its existence.

3. SAME—*Powers of Persons Held Out by a Firm as Partners.*— When a person holds another out as his partner, and a person having no notice to the contrary deals with him as such, such person will have a right to regard him as having all the powers of a partner, and such powers of disposition of the firm assets in payment of the firm indebtedness as arises out of such relation.

Replevin.—Appeal from the Circuit Court of Winnebago County; the Hon. JOHN D. CRABTREE, Judge, presiding. Heard in this court at the December term, 1894. Reversed and remanded. Opinion filed May 28, 1895.

WEIGLEY, BULKLEY & GRAY and WORKS & HYER, attorneys for appellant.

ARTHUR H. FROST and ROBERT G. McEVOY, attorneys for appellee.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Appellant, as trustee for the Commercial National Bank of Chicago, brought this suit in replevin for a stock of boots and shoes and fixtures in possession of appellee at Rockford, Illinois. Appellee claimed the property by virtue of a bill of sale from Jefferson M. Gove until after the suit was begun, but after that he made no claim of ownership. He filed two pleas, one of property in himself and the other of property in said Gove. There was no evidence in support of the plea of property in appellee and the court so in-

structed the jury, and they found the property in Gove under the second plea. Judgment was therefore entered for appellee for return of the property and for costs.

Plaintiff claimed the property under a bill of sale from the firm of Gove & Bonesteel, transferring the same to him as trustee for the bank, and providing that the stock should be inventoried at fair cash market value, and the amount credited on notes of the firm held by the bank which were to be surrendered to that amount. The bill of sale was executed in the firm name by Luke L. Bonesteel, and he was only a nominal partner of Jefferson M. Gove, who did not participate in its execution. The notes held by the bank, six in number, and amounting to $1,530, were all executed by Gove, who signed to each of them the firm name of Gove & Bonesteel. The last of these notes was dated April 14, 1893, and the bill of sale was made on the 26th of the following month. Plaintiff found the stock of goods in the possession of the defendant, who had been a clerk in the store, but who had a bill of sale and had paid one month's rent, and had the insurance transferred to him. It is conceded that the transfer to defendant was merely colorable. The notes were made to L. L. Ferris and indorsed by him to the bank, which discounted them and held them as assignee. On the trial, defendant was permitted to prove by Gove that the notes were accommodation paper, without any claim or evidence that the bank took them with notice of that fact. The evidence was not competent.

Although Bonesteel was not an actual partner with Gove he had been held out as such by Gove in the execution of the notes in the firm name very shortly before the bill of sale was made, and the bank had a right to suppose that he was invested with all the powers of a partner unless it had notice to the contrary in some manner. No circumstance was proved that could afford such information, nor was any notice given unless it was given by Gove to an attorney for the bank when on a train going to Chicago, and on that question the parties contradicted each other as witnesses. The attorney had been to Rockford to see Gove with ref-

erence to the notes, and Gove claimed that he told the attorney on the train that the partnership with Bonesteel only ran from 1891 to 1892, and explained the arrangement for the use of Bonesteel's name during that time which he said was that he gave a check for $10 for such use. This was denied by the attorney, who said that they discussed the partnership, and that Gove said that he had Bonesteel's note for $1,000 for his interest in the firm.

In giving instructions to the jury at the instance of plaintiff the court followed the doctrine laid down in Hanchett v. Gardner, 138 Ill. 571, that a transfer by one partner of the firm assets in payment of a *bona fide* existing firm debt is valid unless the purchasing creditor has notice prior to the consummation of the sale that the copartner does not consent to the transfer, and also instructed that a person holding himself out as partner of another to third persons is estopped to deny the existence of such partnership as to such third persons dealing on the faith of its existence. But on the other hand the court gave at the request of defendant the following instructions:

"The court instructs the jury, that if you believe from the evidence that the defendant, Luke Bonesteel, was not a partner with J. M. Gove at the time of the sale by said Bonesteel to the plaintiff, then the law is, that the plaintiff can not claim the property under such sale."

"The court instructs the jury that even though you may believe from the evidence that the defendant J. M. Gove was in the habit of signing notes under the name and style of Gove & Bonesteel, still, if you further believe from the evidence that the said Bonesteel was not a partner with the said Gove at the time the sale was made, then the law is, that the said Bonesteel had no right to make any transfer of the property, and plaintiff under such circumstances would take no title to the property under the bill of sale made by him."

"The court instructs the jury that while it is true that one partner can dispose of the partnership property without the knowledge or consent of the other partner, still the

law is, that the partner making the sale must be shown to have been the actual partner at the time the sale was made, and it must further appear from the evidence that the person purchasing of such partner acted in good faith and without knowledge that the other partner objected to such sale."

These instructions were not in harmony with that given on the subject of estoppel for plaintiff, and the second of them was in direct conflict with it. That signing a firm name to obligations is a representation of the existence of a firm can not be denied, and the relations of the parties had not changed after that was done. There was no dispute of the fact that Bonesteel was not an actual partner with Gove and these instructions amounted to a direction to find for defendant, as the fact could not be found otherwise.

Gove having held Bonesteel out as his partner, if the bank had no notice to the contrary and dealt with him as such, it had a right to regard him as having all the powers of a partner, and such power of disposition of the firm assets in payment of firm indebtedness as arose out of that relation. Under those circumstances Gove would not be permitted to mislead the bank to its injury, and would be estopped from disputing, as against it, the existence of the partnership which he caused it to suppose existed. The rights of the bank would not depend upon the question whether Bonesteel was an actual partner, but upon the distinct ground that he had been held out to be such by Gove. Whether the bank had notice of the true relation of the parties was a disputed question. We think that the instructions recited were wrong. Wiley v. Thompson, 23 Ill. App. 199; Williams v. Fletcher, 129 Ill. 356; Michoff v. Dudley, 40 Ill. 406.

The fourth instruction given for defendant was argumentative and called attention to things that should be considered on the question of good faith, that had nothing to do with it, such as the value of the stock and the amount allowed or given by the plaintiff therefor. The value was less than the notes, and the only agreement about price was that the stock was to be inventoried at fair cash market value and credited on the notes.

It is suggested by counsel that the question in Hanchett v. Gardner, *supra*, arose between creditors of the firm, and that it is not an authority where, as in this case, the question arises between the purchasing creditor and the partner not participating in the sale. But, while that case was between creditors, and it was said that a very different question might arise between a purchasing creditor and non-consenting partner, the rule applicable in such a case as this was stated by the court, and that statement shows the views of the court on the subject.

The judgment will be reversed and the cause remanded.